**In the Matter of KERR CONCRETE PIPE COMPANY, a New Jersey Corporation, Debtor.**

**Bankruptcy No. 75–324.**

United States Bankruptcy Court, D. New Jersey.

March 10, 1986.

Hannoch & Weisman, by Ronald M. Sturtz, Roseland, N.J., for Paterno & Sons, Inc.

Ravin, Sarasohn, Cook, Baumgarten & Fisch by Mark Baumgarten, West Orange, N.J., for debtor.

## OPINION

D. JOSEPH DeVITO, Bankruptcy Judge.

The debtor, Kerr Concrete Pipe Company ("Kerr"), seeks to reopen the above proceeding for the purpose of obtaining an order permanently restraining and enjoining the firm of Paterno & Sons, Inc. ("Paterno") from prosecuting a third-party complaint against the debtor in the Supreme Court of New York. For the reasons set forth below, the motion is granted.

Briefly reviewing the facts, it appears that in 1972 Paterno contracted with the City of New York ("the City") to construct a sewer line with pipe supplied by Kerr. Following the installation of the pipe, the City informed Paterno that the pipe did not meet the specifications required by the contract. Upon Paterno's refusal to correct that problem, the City withheld the payment of $75,000 due on the contract as reimbursement for the City's costs of corrective construction and the diminished life expectancy of the nonconforming pipe. Paterno, in turn, likewise withheld $75,000 from its contractual payments to Kerr. As a result of these developments, Paterno instituted a suit against the City in December of 1974 seeking, *inter alia,* recovery of the $75,000. Specifically, the complaint, dated December 18, 1974, alleged total damages of $179,045.96 based upon four separate causes of action.

Kerr filed a petition under Chapter XI of the former Bankruptcy Act on February 14, 1975. Paterno was not listed as a creditor in the reorganization petition, nor did Paterno file a claim during the pendency of the bankruptcy proceeding. Kerr's Chapter XI arrangement was confirmed by this Court pursuant to an order dated December 27, 1977. The case was administratively closed in June of 1981.

During this time, the Paterno suit against the City continued through the pretrial stage. The case's entire complexion was changed in May of 1981, when the New York court permitted the City to amend its pleadings and interpose a counterclaim against Paterno for a sum in excess of $300,000. The counterclaim was based upon further costs incurred by the City in rehabilitating the defective pipe installed by Paterno and supplied by Kerr. As a result of this development, Paterno impleaded Kerr as a third-party defendant. It was this action which precipitated the instant motion to reopen the case and to restrain Paterno from prosecution of the impleader action.

Kerr alleges that Paterno is foreclosed from pursuing any claim at this time because of Paterno's failure to file a claim during the pendency of Kerr's reorganization proceeding. Kerr maintains that Paterno, being fully cognizant of Kerr's Chapter XI filing, should have sought adjudication of its claim in the bankruptcy court.

In response, Paterno insists that its claim, as embodied in the third-party complaint, is only now ripe for judgment; that the alleged claim was previously so lacking in substance that it could not be liquidated within the provisions of the former Bankruptcy Act. Thus, the illusory claim could not have been properly raised in the prior bankruptcy proceeding. Paterno's im-

pleader action is, therefore, not barred by Kerr's prior adjudication in bankruptcy.

There can be no question that the instant matter is governed by the Bankruptcy Act of 1898. "A case commenced under the Bankruptcy Act ... shall be conducted and determined under such Act...." Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 403[a], 92 Stat. 2549, 2683 (1978).

■ The former Act spoke directly to the question of the proof and allowance of claims in a bankruptcy proceeding:

> Claims which have been duly proved shall be allowed upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest or unless their consideration be continued for cause by the court upon its own motion: Provided, however, That an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this Act.

§ 57(d) of the Bankruptcy Act, formerly 11 U.S.C. § 93(d) (repealed 1978). The former Act provides that contingent claims are allowable when liquidated or estimated by direction of the court. It is for the court to determine if a claim is not allowable due to the inability to liquidate or estimate its amount. The Court takes note of the analysis made by the learned commentary:

> The problem of contingent claims in bankruptcy is thus a problem more of remedial than of substantive law. Its gist is the question whether or not the bankruptcy court will deem liquidation or estimation of the claim reasonably feasible, a question as to which the parties in interest may advance all the reasons available, but whose solution will ultimately rest upon the exercise of judicial discretion in light of the circumstances of the case, particularly the probable duration of the process of liquidation as compared with the period of future uncertainty due to the contingency in question. For the discussion of contingent claims, therefore, reference should primarily be made to the treatment of § 57.

3A *Collier on Bankruptcy* ¶ 63.30 (14th ed. 1940). The matter is then one for judicial discretion, with the bankruptcy court applying a rule of reason to either liquidate or estimate the contingency. Only if those alternatives are unfeasible should the court disallow the claim as unprovable, and thereby render it nondischargeable. Furthermore, former § 57(d) necessarily implies that it is incumbent upon the holder of a contingent claim to come before the bankruptcy court and submit the question of liquidation or estimation to the court's sound discretion.

■ Based on this treatment of contingent claims by the former Act, this Court is completely justified in granting Kerr's request to permanently restrain the Paterno lawsuit. Paterno was, at all times, cognizant of the facts of the situation which existed between itself, Kerr and the City. Paterno was fully aware of the pendency of Kerr's reorganization. As such, Paterno had notice to pursue any claims it might have had against Kerr. Moreover, Paterno had ample opportunity to present such claims in the context of the Chapter XI proceeding. Paterno knew, or should have known, that its litigation with the City gave potential to a claim against Kerr. It follows that Paterno is at fault for failing to act accordingly.

It has already been shown that this Court was empowered under former § 57(d) of the Bankruptcy Act to entertain the allowance of contingent claims. The power thereby bestowed to liquidate or estimate such contingencies within the scope of the bankruptcy case would have been directly applicable to the instant matter. By not submitting its contingent claim to this Court during Kerr's reorganization, Paterno foreclosed this Court from rendering a judicious decision.

It is self-evident that Paterno willingly gave up its rights to assert its claim in the prior Chapter XI case. Having turned its back on the remedies offered by the former Bankruptcy Act, the Court will not now allow Paterno to attack the newly reorganized debtor with a claim that should have been addressed nearly a decade ago. Paterno's assertion that this claim has only recently become ripe for resolution is unfounded. Paterno knew enough to plead four separate causes of action and demand $179,045.96 in damages in the complaint filed with the New York state court in December of 1974. To instigate a civil action in 1974 with damages calculated to the penny, surely Paterno had more than a sufficient basis to file some type of claim, contingent or otherwise, in Kerr's proceeding. Up to the present time, Paterno was apparently well-satisfied with the original $75,000 in payments it withheld from Kerr. Whatever the reasons for Paterno's change of heart, the Court is unmoved. By its own inaction and apparent unwillingness to appear before this Court during Kerr's reorganization, Paterno must be satisfied with the remedies it already has availed itself of.

In conclusion, the Court will first reopen the instant case in accordance with the principles espoused in *In re Willie C. Norman*, 54 B.R. 809, 810 (Bankr.D.N.J.1985) (DeVito, B.J.) (dealing with the procedure for the reopening of a bankruptcy proceeding). Second and more importantly, the motion to permanently restrain and enjoin the Paterno lawsuit is hereby granted.

Submit an order in accordance with the above.